# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LINDA M. HART,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　Case No.  **6:07-cv-719-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for disability insurance benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

### *I. BACKGROUND*

**A.**　　**Procedural History**

Plaintiff filed for a period of disability and disability insurance benefits on October 20, 2004. R. 40-44.  She alleged an onset of disability on December 11, 2003, due to right foot and toe pain.

R. 50. Her application was denied initially and upon reconsideration. R. 30-32, 34-37. Plaintiff requested a hearing, which was held on June 26, 2006, before Administrative Law Judge Philemina M. Jones (hereinafter referred to as "ALJ"). R. 208-32. In a decision dated October 24, 2006, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 9-19. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 207. The Appeals Council denied Plaintiff's request on February 23, 2007. R. 5-8. Plaintiff filed this action for judicial review on April 26, 2007. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of pain radiating into her right foot and toes, and pain that radiates up into her foot and leg. R. 50. At the time of the hearing, Ms. Hart was forty-seven years of age, and had completed the twelfth grade. R. 212-13. Plaintiff was employed as a bus driver at Walt Disney World for twenty-one years prior to the alleged onset of disability. R. 214. She had experienced significant problems with her feet requiring surgery over the years, but had continued working. R. 82-123.

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from foot neuromas and obesity, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 14, Finding 4. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, as she could lift and carry ten pounds frequently, stand and walk for two hours in an eight-hour workday with normal breaks with the use of a prescribed orthopedic foot boot, sit about six hours in an eight-hour workday with normal breaks, with no squatting or kneeling (and no manipulative limitations). R. 14, Finding

5.  In making this determination, although the ALJ found that Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, the ALJ determined that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely credible for the reasons set forth in the decision. R. 17.  Based upon Plaintiff's RFC, the ALJ determined that Plaintiff could not perform her past relevant work as a bus driver.  R. 18.  However, after considering Plaintiff's vocational profile and RFC, and based on the testimony of the Vocational Expert regarding the availability of sedentary and unskilled jobs, the ALJ concluded that Plaintiff could perform other work existing in significant numbers in the national economy.  R. 18-19 & Finding 10.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 18-19 & Finding 11.

Plaintiff now asserts four points of error.  First, she argues that the ALJ erred by finding she had the RFC to perform sedentary work contrary to her treating doctor's statements.  Second, she claims the ALJ erred by improperly evaluating Plaintiff's non-exertional impairment of pain from her foot neuromas.  Third, Plaintiff contends the ALJ erred by questioning the VE with a hypothetical question that did not adequately reflect the Plaintiff's limitations.  Fourth, she argues that the ALJ erred in evaluating her credibility.  The Court finds that the decision must be **REVERSED** and **REMANDED** for the reasons set forth below.

## *II.  STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C.

§ 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her

from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ANALYSIS

**The treating physicians' opinions and the hypothetical to the VE**

Plaintiff argues that the ALJ should not have found her able to perform sedentary work requiring her to stand and walk for two hours in an eight-hour workday, in light of the opinion of her treating physician opined that she would be unable to walk for more than one hour a day, and could not stand at all in one position, thereby precluding a full range of sedentary work. Doc. No. 17. The Commissioner does not dispute that Plaintiff has a long history of problems with her feet and has had several surgeries for bunions, hammertoes, excision of scar tissue, and neuromas. R. 76-77, 86, 90, 95-96, 106, 122, 158, 161. However, the Commissioner contends that substantial evidence in the record supported the ALJ's[1] conclusion that plaintiff could perform a limited range of sedentary work despite her foot conditions.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments

---

[1] The Commissioner consistently refers to the ALJ's decision as "his" decision, rather than the correct possessive of "her" opinion.

is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff's problems with her feet began in 1994 when she had surgery for hammertoes and bunions. R. 119-22. Following surgery, plaintiff apparently re-injured her left foot and had follow up surgery to remove screws and align a bone in the foot. R. 115-17. Plaintiff then complained of residual pain, tingling, and numbness in her foot and had a third surgery. R. 106-10. In 1996, Plaintiff had a fourth surgery to remove screws, correct a hammer toe, and remove a bone spur. R. 94-96. Plaintiff continued to complain of pain, mostly in her right foot, but continued to work until December 2003. R. 40, 82-93.

Plaintiff alleges an onset date of December 2003. R. 12. Months before, Plaintiff had started to receive treatment again from Dr. Mark Bornstein on July 24, 2003 for significant problems with both feet, difficulty walking, and problems wearing shoes. R. 81. Dr. Bornstein noted "significant hammer digit syndrome" on the left 2nd, 3rd, and 4th digits, as well as "significant neuroma type symptoms" on the right foot. R. 81. Dr. Bornstein recommended conservative treatment and administered a Cortisone injection. R. 81. Plaintiff continued to have pain and saw Dr. Bornstein on September 20, 2003 for the "same symptomatology [with] the majority of her symptoms are related to the neuroma on the right foot"; another Cortisone injection gave her no relief. R. 78-80. Plaintiff continued to report significant pain limiting her ability to walk and to wear shoes, and Dr. Bornstein

performed surgery on December 11, 2003 to "stay fuse hammertoe repair of the second digit right" and an "[e]xcision of neuroma second and third interspace right." R. 76-78.

Although at first, Plaintiff had little pain or problems (R. 74), afterwards Plaintiff began to complain of intermittent pain, from being on her feet a lot; Dr. Bornstein instructed Plaintiff to "back off her activities more." R. 72. By February 2004, due to Ms. Hart's increased activities and pain, Dr. Bornstein noted a "slow down" of the healing process, and recommended that she should "stay out of work a little longer." R. 71. In March 2004, Plaintiff continued to have pain, and x-rays revealed inflammation in the bottom of her right foot; Dr. Bornstein prescribed a Medrol dose pack. R. 70. On March 25, 2004, Plaintiff continued to complain of pain in both feet with difficulty walking and wearing shoes, and the physical examination revealed significant tenderness on the balls of both feet and in the surgery site. R. 68. Dr. Bornstein noted that Plaintiff "is definitely not ready to go back to work." R. 68.

Plaintiff, who was still experiencing significant pain three months after the surgery, switched to Dr. Mason on March 8, 2004. R. 161. During the examination, Dr. Mason noted scar tissue in the right foot, and prescribed a Medrol Dosepak. R. 161. Between several visits in March and April 2004, Plaintiff was experiencing increased intensity in pain, and following an MRI, Dr. Mason opined that she probably had more than just scar tissue, *i.e.*, a "stump neuroma." R. 160-61. Because the pain was severe, he decided to put her foot in a cast. R. 161. On May 14, 2004, Dr. Mason performed yet another surgery on Plaintiff's foot to excise the stump neuroma and scar tissue in the second and third interspace of the right foot. R. 124-25. Even with the surgery, however, on June 11, 2004, Plaintiff continued to complain of significant pain; Dr. Mason noted significant post-op edema in the lower extremity. R. 158. Dr. Mason recommended Plaintiff use the cast again, and stated that although

Plaintiff had the surgery, "She is going to have significant scar tissue as she had last time" and he discussed having "realistic expectations" with her. R. 158. Even with the use of the cast, Plaintiff continued to have pain and swelling; Dr. Mason considered this condition "normal" after surgery and indicated that Plaintiff was slowly improving. R. 157. By September 2004, because Plaintiff continued to have pain and edema, Dr. Mason put her on "complete non weight-bearing with crutches" and recommend that Plaintiff should continue to stay out of work. R. 156. In November 2004, Dr. Mason noted "significant swelling" and referred Plaintiff for a neurological consultation. R. 153.

Plaintiff points to evidence that she was instructed by her treating physicians to stay out of work as a bus driver from December of 2003 to February of 2005. R. 71, 74, 156. On February 14, 2005, Plaintiff's treating podiatrist Dr. Mason authorized Plaintiff to perform "light duty, *sit down only*, no motor vehicle driving." R. 152 (emphasis added). The Court concurs with Plaintiff that Dr. Mason's precise definition of "light duty" is not clear, but he limited Plaintiff to "sit down only," which at a minimum meant "no standing."[2]

The Commissioner contends that the ALJ properly rejected Dr. Mason's statement that limited Plaintiff to "light" work as ambiguous and unsupported by his treatment notes. Doc. No. 20 (citing R. 151-61). The Commissioner also argues that the ALJ properly rejected Dr. Mason's opinion that Plaintiff would need to be seated all day because "this evidence indicates that plaintiff did not have a condition that would produce disabling pain or prevent her from performing a limited range of

---

[2]For "sedentary" work, sitting is generally involved, but a certain amount of walking and standing is necessary in carrying out job duties. Social Security Ruling 83-10. The regulations indicate that being on one's feet is required "occasionally" at the sedentary level, meaning periods of standing or walking should generally total no more than two hours in and eight-hour workday. *Id*.

sedentary work" and in light of Dr. Perdomo's CE and state agency medical reviewers. R. 17, 143-52, 162-69. Dr. Perdomo's January 2005 consultative evaluation of Plaintiff for her right foot pain noted that Plaintiff walked down the hall and got on and off of the examination table without difficulty, although she was wearing an orthopedic boot; Plaintiff was tender over her foot joints and had a decreased range of motion in her right ankle; she could not squat or stand while balanced on her right toes. R. 141-42. Dr. Perdomo opined that Plaintiff could stand or walk for two hours (wearing her boot), but should lift or carry no more than ten pounds, and avoid squatting or kneeling. R. 141-42.

On June 15, 2005, Ms. Hart returned to Dr. Mason with continued complaints of pain; he opined that "she has evidence of posterior tibialis tendonitis with some crepitus in that area, but also has a MCV and EMG and clinical findings consistent with tarsal tunnel syndrome" and "significant tarsal tunnel syndrome needing surgical intervention and decompression." R. 193. By fall 2005, Dr. Mason recommended Plaintiff be seen at "the Mayo Clinic, Shands, or some facility such as that, because of the complexity of her problem"; she should seek treatment from a pain management provider, Dr. Creamer. R. 191-92, 197-99. When Dr. Creamer examined Plaintiff he noted range of motion restrictions of the right ankle, which resulted in pain in the base of her toes secondary to traction on the tendons with movement. R. 198. Dr. Creamer also noted tenderness to palpation in the dorsal and ventral aspects of the foot, right ankle dorsiplantarflexion graded at 2/5, and significant increased sensitivity to touch over the incision areas of the right foot. R. 198.

Dr. Creamer diagnosed Morton's neuroma, status post surgical procedure times two, with residual neuroma resulting in significant neuropathic pain; he prescribed Lidoderm patch and Lortab, Neurontin, consider being seen by a orthotist for fabrication of bilateral shoe orthotics; and be considered her for a spinal cord stimulator. R. 199. Plaintiff saw Dr. Creamer again in March and

April 2006, and he completed an Attending Physician Statement indicating that Ms. Hart suffered from Morton's Neuralgia, with foot pain resulting in an inability to stand or walk for a long period of time. R. 204. Dr. Creamer specifically opined that Plaintiff could not stand *any* hours in an eight-hour workday, could walk intermittently up to one hour in an eight-hour workday, and could sit for eight hours a day; she could not climb, twist, bend or stoop. R. 205.

Although Plaintiff argues the ALJ mistakenly ignored Dr. Creamer's opinion, it appears the ALJ did not have it before her (whether she should have requested it is not an issue raised by Plaintiff, and is not considered in light of the Court's decision to remand on other grounds). The only reference the ALJ makes to Dr. Creamer's opinion is to note in her decision that, "Dr. Creamer did not impose any limitations on the claimant's ability to function." R. 17. It appears that Dr. Creamer's April 2006 Attending Physician Statement (R. 204-06) was not submitted to the ALJ before the hearing, but was submitted by Plaintiff's former hearing counsel after the ALJ's decision, to the Appeals Council in December 2006. *See* R. 202-03 (referring to attached statement of Dr. Creamer).

When a plaintiff submits additional evidence to the Appeals Council and the Appeals Council denied review, the court must determine whether the Commissioner's decision is supported by substantial evidence on the record as whole. *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007); *Hummel v. Astrue*, No. 8:06-CV-725-T-EAJ, 2007 WL 2492460, *7 (M.D. Fla. Aug. 30, 2007) (under *Ingram*, the court reviews whether the decision to deny benefits is supported by substantial evidence in the record as a whole, including evidence submitted to the Appeals Council).

Here, Dr. Creamer specifically opined that Plaintiff could not stand *any* hours in an eight-hour workday, could walk intermittently up to one hour in an eight-hour workday, and could sit for eight

-10-

hours a day; she could not climb, twist, bend or stoop.[3] R. 205. These restrictions are significant for two reasons that undercut the ALJ's decision, which was not supported by substantial evidence, and warrant remand for further consideration. First, the restriction to no standing and intermittent walking no more than one hour per day were not included to the hypothetical the ALJ presented to the VE[4]. Second, Dr. Creamer's limitations support Plaintiff's testimony of her limitations.

The Plaintiff has argued that the ALJ did not properly rely on the testimony of the Vocational Expert because she posed a hypothetical question that did not adequately reflect Plaintiff's limitations, including those set by Dr. Creamer. The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). Accordingly, since the ALJ did not pose a hypothetical to the vocational expert including or defining all the claimant's limitations, the testimony of the vocational expert should be rejected because it did not fully and accurately reflect the claimant's condition. The ALJ relied on the opinion of the VE to conclude that Plaintiff could perform the job of order clerk, charge account

---

[3] The Commissioner puts much stock in the argument that "Dr. Creamer opined that, although plaintiff could not return to her past work, she could return to some type of sedentary employment and recommended vocational rehabilitation." Doc. No. 20 at 9 n. 5 (citing R. 204-06). That determination is one solely for the ALJ to make. Dr. Creamer's opinion is certainly consistent with the ALJ's that Plaintiff could not perform her occupation as a bus driver; however, without access to a VE, Dr. Creamer is not suited to determining whether "sedentary" or seated work is available in the national economy – that determination is left to the ALJ under the Regulations. It comes down to whether the hypothetical question, as presented to the VE, contained an accurate assessment of Plaintiff's limitations, which in this case it did not.

[4] By the same token, had the ALJ presented Dr. Mason's restriction of "only sitting," the hypothetical might have been sufficient, but that limitation was not included in the hypothetical.

clerk, and an assembly worker. R. 18. The hypothetical posed to the VE asked the VE to assume that Plaintiff could stand and walk for *two hours* in an eight-hour work day with normal breaks (R. 229-30), and omitted the need for Plaintiff to wear an orthopedic foot boot. The Commissioner's decision was not based on substantial evidence with Dr. Creamer's limitations omitted from the hypothetical to the VE.

In addition, the record of Plaintiff's multiple foot surgeries and Dr. Creamer's opinion of her limitations support Plaintiff's complaints of pain and her credibility. The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were "not entirely credible." R. 17. The Commissioner contends[5] the ALJ properly assessed Plaintiff's subjective complaints.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988). The medical evidence show that Plaintiff had a medical condition that could reasonably be expected to cause pain, foot neuromas, and worked in a position, bus driver, from 1994 to 2003, that would naturally aggravate such a condition. It is no surprise that Plaintiff consistently complained of pain to her treating doctors. *See* R. 128, 151, 152,

---

[5]The Commissioner also misconstrues Dr. Mason's comments about Plaintiff's "disproportionate" pain, taking it out of context. R. 153. Dr. Mason was referring to the disproportionate pain that surgical recovery alone would cause as opposed to an independent neuroma, which is what he eventually determined was the cause of Plaintiff's pain, and that additional surgery might be necessary. R. 151.

153, 155, 156, 157, 158, 159, 160, 161, 190, 191, 192, 193. Plaintiff's treating physicians gave credence to her pain complaints, prescribed pain medication, recommended her to the Mayo Clinic or Shands for her "complex problems" and eventually referred her for pain management. Dr. Creamer eventually opined that a spinal cord stimulator could be considered in an attempt to alleviate the pain. R. 199. The ALJ's assessment of Plaintiff's testimony as "not entirely credible" was not based on substantial evidence.

### *IV. CONCLUSION*

For the foregoing reasons, the decision of the Commissioner is inconsistent with the requirements of law and is not supported by substantial evidence. Accordingly, it is **ORDERED** and **ADJUDGED** that the Commissioner's decision is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is **DIRECTED** to enter judgment consistent with this opinion and thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on June 27, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record